**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DARYL R. BOOKER,**

|                          |                     |
|--------------------------|---------------------|
| **Plaintiff,**           | **1:07-cv-646**     |
|                          | **(GLS)**           |
| **v.**                   |                     |

**MICHAEL J. ASTRUE,** Commissioner
of Social Security,

**Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Ervwin, McCane Law Firm | THOMAS C. ERWIN, ESQ. |
| 23 Elk Street | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | KARLA J. GWINN |
| United States Attorney | Special Assistant U.S. Attorney |
| 445 Broadway | |
| James T. Foley U.S. Courthouse | |
| Albany, NY 12207-2924 | |
| | |
| STEPHEN P. CONTE | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

## I.  Introduction

Plaintiff Daryl Booker challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the Commissioner's decision is reversed and remanded.

## II.  Background

On May 16, 2003, Booker applied for DIB and SSI under the Social Security Act, alleging disability beginning on May 28, 2002, due to depression, hepatitis C, a learning disorder, post-traumatic stress disorder, diabetes, and various musculoskeletal impairments.  (Tr.[1] at 98-100, 161-63.)  Booker's applications were initially denied by an Administrative Law Judge (ALJ) following a hearing held on July 21, 2004, but his case was remanded by the Social Security Administration Appeals Council on May 25, 2005.  (Tr. at 102-106, 113-126, 140-143.)  After a supplemental hearing was held on October 27, 2005, (Tr. at 465-519), the

---

[1]"(Tr. )" refers to the page of the Administrative Transcript in this case.

ALJ issued a second decision denying the requested benefits, which became the commissioner's final decision upon the Appeals Council's denial of further review.  (Tr. at 5-7, 14-23.)

Booker then commenced the present action by filing a complaint on June 19, 2007.  (Dkt. No. 1.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 11, 12.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 13, 16.)

### III.  Contentions

Booker contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards.  Specifically, Booker claims that the ALJ: (1) erred in finding at step two that Booker's left foot condition, diabetes, and learning disorder were not severe impairments; (2) erred in finding at step three that Booker's depressive disorder did not meet or medically equal a listed impairment; and (3) improperly assessed Booker's residual functional capacity (RFC).  (*See* Pl. Br. at 13-20, Dkt. No. 13.)  The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV.  Facts

The evidence in this case is undisputed and the court adopts the

parties' factual recitations. (*See* Pl. Br. at 5-12, Dkt. No. 13; Def. Br. at 1, Dkt. No. 16.)

## V.  Standards of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Severity of Impairments

A severe impairment is one which "'significantly limits [a] claimant's physical or mental ability to do basic work activities.'"  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also* 20 C.F.R. § 404.1521(a); Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  The severity determination is a threshold determination generally used to screen out de minimis claims. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  And as with

4

steps one, three, and four of the five-step process, a claimant has the burden at step two to establish the existence of a severe, medically determinable impairment for the requisite twelve-month period. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. § 404.1509.

In addition to considering physical limitations, the ALJ must also evaluate the severity of any mental impairments the claimant may have. In doing so, the ALJ must first determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant has such an impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in the context of "four broad functional areas": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(b)(2), (c)(3); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will

conclude that the claimant's mental impairment is not 'severe' ...." *Kohler*, 546 F.3d at 266 (citation omitted).  However, if the claimant's mental impairment is deemed severe, the ALJ must determine whether the impairment meets or equals the severity of a mental disorder listed in § 12.04 of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520a(d)(2).

An ALJ is required to specify and document his findings in his decision, showing the "significant history ... and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas."  20 C.F.R. § 404.1520a(e)(4).  However, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (citation omitted).  Moreover, where an ALJ's decision does not include express reasons for particular findings, remand is not required if other portions of the decision and clearly credible evidence show that substantial evidence supports the determination.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (unpublished).

6

**1.    Diabetes**

The court rejects Booker's contention that his diabetes constitutes a severe impairment.  The record shows that Booker was diagnosed with type II diabetes, but that the disease was being successfully controlled through dietary restrictions.  (Tr. at 291-310, 316, 332-337.)  The record contains no evidence suggesting that Booker's diabetic condition limited his ability to perform basic work-related activities in any way.  And as the ALJ highlighted, Booker's diabetes "was well controlled with his improved diet ... [and] he does not take [any] medications for diabetes."  (Tr. at 20.)  Thus, the ALJ's finding that Booker's diabetes does not "result in more than minimal limitations in his ability to perform basic work related activities" is clearly supported by substantial evidence.  (*Id.*)

**2.    Learning Disability**

The ALJ's determination that Booker's learning disability was not severe is suspect.  The ALJ rests his entire, very short analysis on the finding of scores in the average I.Q. range on intelligence tests performed in 2000 and 2003.  (Tr. at 20.)  Because the learning disability falls under the rubric of mental impairments, the ALJ was required to employ the special technique required in the evaluation of such impairments.  *See* 20

C.F.R. § 404.1520a.

The ALJ failed to list the functional limitations and symptoms specifically in the context of his determination that Booker's learning disability was not severe.  (Tr. at 20.)  Later in the decision, as part of the RFC analysis, the ALJ did list the tasks that psychologist Dr. Sheldon Grand believed Booker was capable of.  (Tr. at 22.)  The ALJ also made findings across the four functional areas.  (*Id.*)  However, it is not clear from the decision whether the ALJ's findings across the four areas related to Booker's learning disability, Booker's severe depression, the two in combination, or the two in combination with all of Booker's impairments.  (*Id.*)  A listing of the symptoms of the learning disability in terms of limitations, as opposed to the opinions of the medical professionals as to what functional capacity Booker retained, is entirely absent from the ALJ's decision.  Also missing from the decision is any explanation of the reasoning the ALJ employed in translating the opinions of the medical professionals into his conclusions across the four functional areas.  This is particularly troubling in light of the fact that the order of the Appeals Council in remanding the case the first time specifically instructed the ALJ to "provid[e] specific findings and appropriate rationale for each of the

8

functional areas" as they related to Booker's mental impairments. (Tr. at 141-142.) The original ALJ's decision contains a more thorough analysis of Booker's mental impairments than is present here and that decision was still found wanting. (Tr. at 120-121.) Moreover, the present ALJ's decision indicates no evaluation of the evidence relevant to Booker's mental impairments that supplemented the record subsequent to the remand. The decision makes no mention that Booker was undergoing treatment by both a psychiatrist, Dr. David Pallas, and a psychologist, Dr. Dwayne Monk. (Tr. at 480-481.) The session notes and intake report of Dr. Pallas continue to diagnose Booker as learning disabled and mention problems with reading, memory, and concentration. (Tr. 396-398, 406-410.) How Dr. Pallas's findings were evaluated and what weight, if any, was assigned to Dr. Pallas's evaluation in the context of the learning disability and mood disorder is, along with any other mention of Dr. Pallas, absent. Given that, as a treating physician, Dr. Pallas's opinion would be given substantial weight under most circumstances, it is unclear whether the proper legal standards were applied by the ALJ in this instance. *See Burgess v. Astrue*, 537 F.3d 117, 127-130 (2d Cir. 2008) (noting that good reasons must be provided for failing to provide a treating physician's

9

determinations controlling weight).

A review of Dr. Grand's reports also reveals that the ALJ did not properly consider Booker's results.  The ALJ failed to mention that Dr. Grand's statement that Booker could "probably handle simple clerking tasks" was qualified by the caveat "but this needs to be further explored," and omitted the word "much," which qualified the amount of supportive assistance Booker would require in low-pressure type jobs.  (Tr. at 22, 186.)  Though Booker's general I.Q. results placed him in the low average range, his aptitude testing scores were all "below average," resting between the second and tenth percentiles.  (Tr. at 349.)  The ALJ further failed to mention Dr. Grand's conclusion and recommendation that Booker "reflects paranoid feelings, and this issue needs to be considered carefully relative to any educational or vocational situation" and that both of Grand's reports indicate that the testing data "strongly suggests" learning disability "consistent with his special classes background."  (Tr. at 350.)

Dr. Annette Payne's evaluation, whose opinion was given "great weight," raises similar concerns.  (Tr. at 22.)  For example, Dr. Payne indicates that Booker would have trouble learning new tasks, trouble performing complex tasks, and could perform simple tasks, but with

10

supervision.  (Tr. at 220.)  The need for extra supervision in performing simple tasks is specifically mentioned in 20 C.F.R., Part 404, Subpart P, Appendix 1(C)(4), as among the types of interference that would allow for a finding of "marked limitation in concentration, persistence or pace." Without some analysis on the part of the ALJ indicating why he found only "mild to moderate limitations in maintaining concentration, persistence or pace," the court has no way of determining whether the proper legal standards were applied in reaching that conclusion.  (Tr. at 22.)

Given the foregoing, it is clear that the question of severity of Booker's learning disability does not present a case in which application of the proper legal standards could lead to only one conclusion.  Were the finding of severity dispositive in the five-step analysis, the court would be forced to remand for more complete findings.  *See Meadors v. Astrue*, No. 09-3545-cv, 2010 WL 1048824, at *3 (2d Cir. Mar. 23, 2010); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to correct legal principles.").

Uncertainty at this stage does not, standing alone, warrant remand or reversal if the ALJ's other findings show that the proper legal standards were applied and that all of Booker's impairments were properly considered at all of the subsequent steps.  However, as discussed further below, the court cannot conclude that the proper legal standards were applied throughout the rest of the ALJ's analysis.

**3.     Left Foot Condition**

Booker further claims that the ALJ failed to properly evaluate the evidence when determining that his left foot impairment was not severe. (Pl. Br. at 13, Dkt. No. 13.)  The Commissioner counters that the record does not support Booker's allegation that his foot pain was severe, and that the ALJ's determination of non-severity was reasonable.  (Def. Br. at 10, Dkt. No. 16.)  The court is unable to find the determination as to Booker's left foot pain to which the parties refer.[2]  This is because the ALJ's decision does not contain a specific finding with regard to Booker's left foot at step two or any time thereafter.  This is error significant enough to defeat meaningful review at step two and, consequently, each

---

[2]The parties may, in fact, have the same problem, since Booker did not cite to any portion of the decision in his brief, while the Commissioner generally cites to four full pages spanning the ALJ's findings of fact and conclusions of law.

successive step.

The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Even an impairment found not to be severe is entitled to consideration by the ALJ. 20 C.F.R. § 404.1545(a)(2). Determinations as to pain must be made according to specific agency regulations. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).

Here, the ALJ offers no analysis of Booker's left foot pain either in accordance with agency regulations or otherwise. The Commissioner seems to suggest in his brief that the ALJ implicitly considered Booker's claim of left foot pain by the ALJ's citation to the experts' medical evaluations and broad statement by the ALJ that he had "considered all" the evidence and symptoms in accordance with the regulations. (Def. Br. at 6-8, Dkt. No. 16; Tr. at 20.) That is not sufficient to enable meaningful review. "[I]t is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons." *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983) (citation omitted). Moreover, a court "may not properly affirm an administrative action on grounds different than those considered by the agency." *Burgess*, 537 F.3d at 128 (internal

quotation marks and citation omitted).  Remand is warranted where an

ALJ has given no explicit consideration to a claim of pain.  *See, e.g.*,

*Knapp v. Apfel*, 11 F. Supp. 2d. 235, 238 (N.D.N.Y. 1998) ("[A] finding of

substantial evidence cannot rest on a presumption that the ALJ

considered plaintiff's pain complaints.").  Unlike Booker's learning

disability, which was accompanied by an insufficient explanation of the

ALJ's reasons for his finding, both the finding and the explanation

regarding Booker's claimed foot condition are wholly absent.  The court

has no basis beyond speculation to conclude that the ALJ's decision was

supported by substantial evidence or that the proper legal standards were

applied.  Consequently, remand is required.

On remand, at step two, the ALJ should make an explicit and

detailed finding as to Booker's learning disability and left foot pain,

applying the proper legal standards in each case and providing clear

reasons for his findings across the four functional areas.  The ALJ should

also indicate whether his findings across the functional areas are specific

to each impairment, an aggregate of the mental impairments, or an

aggregate of all of Booker's impairments.  If the ALJ makes a step-two

finding which does not include an aggregate of Booker's impairments, the

14

ALJ must provide a second analysis incorporating each and every one, regardless of level of severity, as part of his analysis at step three.

**B.    Remaining Claims**

Booker makes several additional arguments regarding the ALJ's findings at steps three, four, and five.  In evaluating these arguments, the court is faced with a problem similar to that created by the ALJ's evaluation at step two.  The ALJ made no explicit finding with regard to Listing 12.04 or any other particular listing, making instead a blanket statement that Booker had no impairment or combination of impairments sufficient to meet any listing without further discussion.  (Tr. at 20.)  The ALJ's RFC assessment and conclusion that Booker's self reporting of symptoms is not credible is similarly conclusory.  Because Booker's foot pain and learning disability, severe or not, were entitled to consideration under proper legal standards at each step of the ALJ's analysis, the court is unable to determine if that consideration took place.

Therefore, after carefully reviewing the record, the court concludes that the Commissioner's denial must be remanded for specific findings and reasoning concerning Booker's physical and mental impairments.

**VII. Conclusion**

15

**WHEREFORE**, the for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings

consistent with this Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge

16